IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Watts, #323225, | ) | C/A No. 5:15-01839-HMH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden, Lee Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Michael Watts ("Petitioner"), a state prisoner, filed this pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation ("R&R") on Respondent's Return and Motion for Summary Judgment filed June 29, 2015. ECF Nos. 10, 11. On June 30, 2015, pursuant to *Roseboro v. Garrison*,[1] the court advised Petitioner to file a Response to Respondent's Summary Judgment Motion if he wished to pursue his case. ECF No. 12. On July 31, 2015, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment. ECF No. 14. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 11, be granted.

I.    Background

Petitioner is currently incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2005, Petitioner was indicted during the May term of the Chesterfield County Grand Jury for murder (2005-GS-13-0471); two

---

[1] 528 F.2d 309 (4th 1975).

1

counts of assault and battery with intent to kill (ABWIK) (2005-GS-13-0473, 2005-GS-13-0474[2]); possession of a firearm in a public building (2005-GS-13-0475); discharging a firearm into a building (2005-GS-13-0476); and escape (2005-GS-13-0477). App. 11, 519-26. Additionally, during the April term of the Chesterfield County Grand Jury, Petitioner was indicted for possession of a weapon during commission of a violent crime (2006-GS-13-0499). *Id.* Petitioner proceeded to a jury trial from July 30, 2007 to August 1, 2007, before the Honorable Paul M. Burch, Circuit Court Judge. App. 1. Petitioner was represented by James P. Rogers, Esquire, and Assistant Solicitors Franklin Joyner and Kevin Hales represented the State. App. 1. Prior to the jury's verdict, one count of ABWIK (2005-GS-13-0474) and the possession of a firearm in a public building charge (2005-GS-13-0475) were dismissed on directed verdict. App. 273-74. The jury found Petitioner guilty of the remaining charges. App. 411. Judge Burch sentenced Petitioner to concurrent terms of life in prison without the possibility of parole for murder, 20-years for the other ABWIK conviction, five years for possession of a weapon during the commission of a violent crime, 10 years for discharging a firearm into an occupied building, and one year for escape. App. 416-417.

Robert M. Dudek, Deputy Chief Appellate Defender for Capital Appeals, represented Petitioner in the appeal of his conviction and sentence. App. 10-1. In an *Anders*' appellate brief,[3] Petitioner raised the following issue:

> Whether the court erred by refusing to grant a mistrial where witness Tyrone Miller testified he made an out-of-court identification of appellant from a photograph shown to him by the assistant solicitor where that identification was not revealed to the defense prior to trial, and that unfairly denied the defense its right to a <u>Neal v. Biggers</u>, 409 U.S. 108 (1972), identification hearing?

---

[2] It does not appear that a copy of this particular indictment is part of the record. However, this indictment was dismissed on directed verdict.

[3] *See Anders v. California*, 386 U.S. 738 (1967).

*Id.* at 3. In a Supplemental Pro-Se Brief, Petitioner raised the following two issues on appeal, quoted verbatim:

> Whether trial court erred in denying motion for directed verdict on the offense of murder.

> Whether the prosecutor's remarks during closing argument offend due process, and deprive appellant of a fair trial; and whether this conduct constitutes prosecutorial misconduct.

ECF No. 10-2 at 4. On January 25, 2010, the South Carolina Court of Appeals dismissed Petitioner's appeal in an unpublished opinion. ECF No. 10-3. On February 10, 2010, the South Carolina Court of Appeals issued a Remittitur. ECF No. 10-4.

## II.     Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on July 2, 2010. App. 419-426. Petitioner asserted he was being held in custody unlawfully based on the following grounds, repeated verbatim:

> a)  Counsel was ineffective for failure to object to prosecutorial misconduct.
> b)  Counsel was ineffective for failure to present effective trial strategy.
> c)  Counsel was ineffective for failure to call defense witness.
> d)  Counsel was ineffective for failure to request curative instruction.
> e)  Counsel was ineffective for failure to conduct pre-trial investigation.

App. 426. Plaintiff alleged the following facts to support this allegations:

> a)  Counsel was ineffective for failing to object to false allegations by prosecutor when prosecutor went outside the record in closing argument.
> b)  Counsel was ineffective for failing to request mistrial after investigating officer gave unprofessional testimony.
> c)  Counsel was ineffective for failing to call favorable witness to the defense.
> d)  Counsel was ineffective for failing to request curative instruction where Judge sustained objection for speculation.
> e)  Counsel was ineffective for failing to conduct pre-trial investigation which would have brought forth procedure errors.

*Id.* Assistant Attorney General Karen C. Ratigan filed a Return on behalf of the State.  App. 427-430. A PCR hearing was held on July 16, 2013, before the Honorable R. Ferrell Cothran, Jr.  *Id.*

App. 432. Petitioner was present and represented by Tara D. Shurling, Esquire; Assistant Attorney General Karen C. Ratigan appeared for the State. *Id.* Petitioner and his trial counsel testified as witnesses during the PCR hearing, and Petitioner admitted four exhibits into evidence for Judge Cothran's review. App. 433-507. In an Order filed October 23, 2013, the PCR court denied Petitioner's PCR Application in full, finding Petitioner raised the following allegations and making the following findings of fact and conclusions of law:

## ALLEGATIONS

In his application, the Applicant alleges he is being held in custody unlawfully for the following reasons:

1.  Ineffective assistance of counsel:
    a.  Failed to object to prosecutorial misconduct when solicitor "went outside the record in closing argument."
    b.  Failed to present effective trial strategy:
        1.  Failed to "request mistrial after investigating officer gave unprofessional testimony."
    c.  Failed to call defense witness.
    d.  Failed to request a curative instruction.
    e.  Failed to conduct a pre-trial investigation.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly.

Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

## Ineffective Assistance of Counsel

The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations by a preponderance of the evidence." Frasier v. State 351 S.C. 385, 389, 570 S.E. 2d. 172, 174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of counsel,

he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Porter v. State, 368, S.C. 378, 383, 629 S.E.2d 353, 356 (2006). In order to prove prejudice, an applicant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry v. State, 300 S.C. 115, 117-18, 386 S.E.2d 624, 625 (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 1997) (citing Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052).

The Applicant stated he had several meetings with trial counsel and that they reviewed his version of events and the State's evidence (including the witness statements). The Applicant stated trial counsel never discussed either voluntary manslaughter or self-defense. The Applicant stated trial counsel should have discussed calling his three friends as witnesses at trial (as they went to the club with him that night and did not make any damaging comments in their statements). The Applicant testified he knew there were contradictory witness statements in his case and that trial counsel would point this out at trial. The Applicant testified he also knew trial counsel would argue that no one actually saw him shoot the victim. The Applicant admitted he testified at trial and was able to explain his version of events.

Trial counsel testified he filed discovery motions, received those materials, and reviewed them with the Applicant. Trial counsel testified they also reviewed the Applicant's version of events, the elements of the charges, and the sentence ranges for those charges. Trial counsel testified there was no forensic evidence in this case and that none of the witnesses actually saw the Applicant shoot the victim. Trial counsel testified he attempted to raise reasonable doubt by highlighting the inconsistencies regarding the various witnesses and their statements. Trial counsel testified he spoke to all of the witnesses from the club but that the Applicant never provided him with the names of additional witnesses. Trial counsel testified he did not call Lakesha Raley as a witness – though she gave a statement that another group was ejected from the club with the Applicant – because he did not believe it was a big issue. Trial counsel testified he asked for a curative instruction after a witness commented that Applicant did not give a statement but stated he did not move for a mistrial because he knew the statement would be coming in. Trial counsel testified he did not consider objecting to references to the weapon as an automatic. Trial counsel testified a self-defense charge was not appropriate because he could not argue the Applicant was without fault in bringing on this difficulty. Trial counsel testified he did not recall why he did not request a voluntary manslaughter charge.

This Court finds the Applicant's testimony is not credible, while also finding trial counsel's testimony is credible. This Court further finds trial counsel adequately

conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation.

This Court finds the Applicant failed to meet his burden of proving trial counsel was ineffective in failing to call Lakesha Raley as a witness at trial. As this alleged witness did not testify at the evidentiary hearing, any discussion regarding what she would have testified about at trial is purely speculative. See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme Court "has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial.") (emphasis original).

This Court finds the Applicant failed to meet his burden of proving trial counsel should have moved for a mistrial. At trial, a witness stated the Applicant said he did not want to give a statement. (Trial transcript, p.195). Though trial counsel asked for a curative instruction, he did not move for a mistrial after the trial judge so instructed the jury. (Trial transcript, p.228). Trial counsel testified there was no reason to move for a mistrial because the testimony was going to be admitted. This court agrees. Furthermore, "[i]n order to receive a mistrial, the defendant must show error and resulting prejudice." State v. Harris, 340 S.C. 59, 63, 530 S.E.2d 626, 628 (2000). This Court finds the Applicant has failed to demonstrate either that trial counsel erred in not requesting a mistrial and that his case was prejudiced as a result. This finding is corroborated by the fact that the State presented overwhelming evidence of the Applicant's guilt. See Geter v. State 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt).

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to hearsay. At trial, a witness (an off-duty law enforcement officer on the premises who initially took charge of the investigation) was asked who fired gunshots inside the club while the Applicant was handcuffed outside and replied, "I think nobody did because I went inside the club and checked on that. It was only like five or six people in the club and they said that they didn't hear any shots." (Trial transcript, p.213, lines 13-16). Trial counsel confirmed that he did not object to this statement, as it must have "slipped past" him, but that it was undisputed that people heard gunshots. This Court finds the Applicant has failed to prove error. This comment, however, was not hearsay and not offered for the truth of the matter asserted. Rather, it was a statement regarding the investigation of the crime. See Rule 801(c), SCRE; Caprood v. State, 525 S.E.2d 514, 518, 338 S.C. 103, 111 (2000); State v. Brown, 317 S.C. 55, 62, 451 S.E.2d 888, 894 (1994). This Court also finds the Applicant also failed to prove this statement prejudiced this case, as the State presented overwhelming evidence of his guilt. See Geter v. State, 305 S.C. at 367, 409 S.E.2d at 346.

This Court finds the Applicant failed to meet his burden of proving trial counsel

should have objected to references during the trial that the weapon used was an automatic. The Applicant alleges this was harmful to his case because automatic weapons are illegal. This Court finds the references to an automatic weapon in this case were limited and not calculated to inflame the jury. This Court finds the Applicant has failed to demonstrate he was prejudiced from the references to the weapon as being an automatic. See Butler v. State, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985) (holding in a post-conviction relief proceeding, the applicant bears the burden of proving the allegations in their application).

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected during the State's closing argument. During closing argument, the assistant solicitor attacked the credibility of a defense witness by implying two individuals looked similar. (Trial transcript, p.372, lines 10-14; p.372, line 23 – p.373, line 2). Trial counsel stated he objected because comments about one of these individual's clothing was not in the record. This Court finds the lack of an objection on this point was not deficient and did not prejudice the Applicant's case. See State v. Cooper, 334 S.C. 540, 553, 514, S.E.2d 584, 591 (1999) (noting a solicitor has a right to state his version of the testimony and to comment on the weight to be given such testimony). This Court finds it is clear the assistant solicitor was merely summarizing the defense witness's testimony and explaining why the jury should not consider it because it was implausible. This Court finds the Applicant failed to demonstrate either error of prejudice by the lack of an objection.

This Court finds the Applicant failed to meet his burden of proving trial counsel should have requested jury charges for voluntary manslaughter and self-defense. This Court finds neither charge would have been supported by the facts of this case. The law to be charged must be determined from the evidence presented at trial. State v. Knoten, 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001). The Applicant provided his version of events at the PCR hearing. The Applicant stated he left the club, got a weapon, and went back into the club while holding this weapon. The Applicant said he believed someone pointed a gun at him, so he fired into a crowd of people in order to protect himself. This Court notes these were largely the facts presented at trial. This Court concludes neither a voluntary manslaughter nor self-defense charge would have been warranted under these facts. See State v. Locklair, 341 S.C. 352, 535, S.E.2d 420 (2000) (listing elements of voluntary manslaughter); State v. Davis 282 S.C. 45, 317 S.E. 2d 452 (1984) (listing elements of self-defense).

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test – that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland – that he was prejudiced by the trial counsel's performance. This Court concludes the Applicant

has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

## All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any testimony, argument, or evidence at the hearing regarding such allegations. Accordingly, this Court finds the Applicant has abandoned any such allegations.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial and sentencing proceedings. Counsel was not deficient and the Applicant was not prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of this Order if he wants to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal has been timely filed.

IT IS THEREFORE ORDERED:

1. That the application for post-conviction relief be denied and dismissed with prejudice; and
2. The Applicant be remanded to the custody of the Respondent.

App. 508-16.

On appeal, Appellate Defender Lara M. Caudy filed a petition for a writ of certiorari to the South Carolina Supreme Court on Petitioner's behalf. ECF No. 10-5. Petitioner presented the following issue for review:

Whether Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated when trial counsel failed to request a jury instruction on voluntary manslaughter where there was evidence Petitioner fired his weapon in the heat of passion after he was struck several times during a physical alteration that broke out and a small nightclub?

*Id.* at 3. Assistant Attorney General Joshua L. Thomas filed a Return on behalf of the State. ECF No. 10-6. The Supreme Court denied the petition on February 19, 2015, and a Remittitur was sent on March 9, 2015. ECF Nos. 10-7, 10-8. This federal habeas Petition followed and was filed on April 30, 2015. ECF No. 1.

   III.    Discussion

   A.  Federal Habeas Issues

Petitioner raises the following issue in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: Whether Petitioner's Sixth and Fourteenth Amendment rights to the effective assistance of counsel were violated when trial counsel failed to request a jury instruction on voluntary manslaughter. ECF No. 1 at 5.
>
> Supporting Facts: It was undisputed that a physical altercation broke out on the dance floor of the nightclub after midnight on November 28, 2004, in Pageland, South Carolina. Counsel should have requested a Voluntary Manslaughter jury instruction, because evidence presented at trial supports such claim. There's evidence that petitioner did not start the altercation that lead to the shooting. In fact, petitioner was assaulted by several people while attempting to stop the altercation. Petitioner exited the club and retrieved a firearm only after being assaulted a second time in a different section of the club while attempting to rescue a friend who was also under attack. After exiting the club and immediately reentering the club with a firearm in full view, petitioner made his way back to the dance floor area in search of other friends who were still inside the club. Petitioner did not fire a shot until he saw what he thought was a firearm being raised in his direction. Petitioner only fired one shot inside the nightclub in reaction to seeing a possible gun.
>
> There were several reports of more shots inside the nightclub, even after petitioner was handcuffed on the ground which would support petitioner's claim that there was another firearm inside the club.
>
> Evidence supports that petitioner fired gun after being assaulted twice and while attempting to rescue friends from the club. The evidence in this case case does not support a murder conviction and based on that evidence counsel should have requested a jury instruction for Voluntary Manslaughter. ECF No. 1-1 at 2-3.

B.  Standard for Summary Judgment

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the Court assume the existence of a genuine issue of material fact when none exists.  *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.  Habeas Corpus Standard of Review

1.      Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 411 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 410.

a.   Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005).  The Supreme Court has provided further guidance regarding the deference due to state-court decisions.  *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011).  To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."

*Id.* at 102.  The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)(emphasis added in original)).  "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412).  In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-

court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.  Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims.  First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.  *Id.* at 687.  Second, the petitioner must show that this deficiency prejudiced the defense.  *Id.* at 694.  The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. 131 S. Ct. at 1398.  The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did."  *Id.* at 1399.  In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel.  *Id.* at 1397.  In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ.  *Id.*  The United States Supreme Court granted certiorari and

reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2.    Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief

in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B)    (i) there is an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.   28 U.S.C. § 2254(b)(1)(A).   "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011).   Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of

his conviction: (1) through a direct appeal; or (2) by filing an application for PCR.  State law

requires that all grounds be stated in the direct appeal or PCR application.  Rule 203, SCACR;

S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d

767, 770 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80

of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the

judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a

procedural bar by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266, 267 (S.C.

2007).  Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina

courts.  A PCR must be filed within one year of the judgment, or if there is an appeal, within one

year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may

present only those issues that were presented to the South Carolina Supreme Court or the South

Carolina Court of Appeals.  *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding

"that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not

be required to petition for rehearing and certiorari following an adverse decision of the Court of

Appeals in order to be deemed to have exhausted all available state remedies respecting a claim

of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief

Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the

doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise

that issue at the appropriate time in state court and has no further means of bringing that issue

before the state courts.  In such a situation, the person has bypassed his state remedies and, as

such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his

opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495-96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

## IV. Analysis

### A. Procedurally Barred Grounds

Petitioner's claim is not procedurally barred from review, and Respondent maintains that "Petitioner raised this claim in his PCR hearing and in the PCR certiorari before the South Carolina Supreme Court." ECF No. 10 at 7. Accordingly, the undersigned will address the merits

of Petitioner's single habeas ground .

B.  Merits

Petitioner argues trial counsel was ineffective for failing to request a jury instruction on voluntary manslaughter. ECF No. 1 at 5. Respondent moves for summary judgment, arguing "the state PCR court's decision [on the issue] is not an unreasonable application of Strickland and a reasonable application of the facts at trial." ECF No. 10 at 12.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  In *Strickland v. Washington* the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice.  466 U.S. at 687.  Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable.  *Id.* at 688-89.  Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When determining the merits of this issue, The PCR court found:

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have requested jury charges for voluntary manslaughter and self-defense. This Court finds neither charge would have been supported by the facts of this case. The law to be charged must be determined from the evidence presented at trial. State v. Knoten, 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001). The Applicant provided his version of events at the PCR hearing. The Applicant stated he left the club, got a weapon, and went back into the club while holding this weapon. The Applicant said he believed someone pointed a gun at him, so he fired into a crowd of people in order to protect himself. This Court notes these were largely the facts presented at trial. This Court concludes neither a

voluntary manslaughter nor self-defense charge would have been warranted under these facts. See State v. Locklair, 341 S.C. 352, 535, S.E.2d 420 (2000) (listing elements of voluntary manslaughter); State v. Davis 282 S.C. 45, 317 S.E. 2d 452 (1984) (listing elements of self-defense).

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test – that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland – that he was prejudiced by the trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier v. State, 351 S.C. at 389, 570 S.E.2d at 174.

App. 514-15.

At the PCR hearing, trial counsel Rogers testified that prior to the shooting "[t]here had been an argument about the belt buckle. [Petitioner] went up to the people to see what was going on or to try to intervene, and I believe he was struck first." App. 442. Attorney Rogers also testified that Petitioner was put out of the club as a result of that altercation. *Id.* He also agreed that testimony indicated that Petitioner came back into the club and was armed. *Id.* When asked why he did not request a jury instruction on self-defense, Attorney Rogers responded:  "I didn't think at that time self-defense was appropriate because he had gone to the car, gotten the gun, and came back inside." App. 456.[4]

PCR counsel indicated during questioning that once Petitioner returned inside the club, some evidence demonstrated that Petitioner fired a gun in response to another gun being raised in his direction. App. 444; 454-57. PCR counsel also asked: "if someone pointed a gun at him would that not be a separate incident?" to which Attorney Rogers responded:  "That's one way of

---

[4] Though this line of PCR questioning concerns the self-defense charge, it is relevant to what kind of evidence was raised during the trial and trial counsel's reasoning concerning why certain charges were not requested.

looking at it. I didn't perceive it that way at the time." App. 456-57. Thereafter, the following

exchange occurred during Attorney Rogers' direct-examination:

> Q.: But if you happen to have a gun on him and somebody pointed a gun at him, would he not have the right to defend himself?
> A.: Yes.
> Q.: And why would you not have asked for a self-defense instruction?
> A.: Because I perceived that it would not have prevailed because it could have been argued that he was at fault in bringing on the difficulty in as much as he came back into the club with a weapon. Even though he was coming back in to get his friends, I didn't think self-defense was available.
> Q: Okay. What about manslaughter, did you request a jury instruction on manslaughter?
> A: I don't recall if we did or not. I mean, the—
> Q: Well—
> A: The record reflects that we did not.
> Q: Okay.
> A: I don't recall why I didn't.
> Q: You don't recall why you didn't?
> A: Right.
> Q: Okay. There was testimony about—and I'm sorry to be redundant but just trying to make a clear record, about an altercation of verbal fight over a belt buckle that escalated into a fist fight?
> A: Yes.
> Q: And [Petitioner], according to his testimony, was hit by not one, but two people—
> A: Yes.
> Q:—in that altercation?
> A: That's correct.
> Q: He gets put out of the club, goes to the car and gets a gun, and comes right back in and shots ensue leading to these charges?
> A: Yes.
> Q: Did you consider the argument that there was no substantial cooling off period between the time of the initial fight and that there would be a basis for requesting a charge predicated on the fact that there were sudden heat of passion based upon sufficient legal provocation?
> A: The only way I can answer that is, I would have advised [Petitioner] that we would try and get a lesser included. We did not. I do not remember the conversation that [Petitioner] and I had.
> Q: Okay.
> A: So, I can't say why I didn't.
> Q: Okay.
> A: But I didn't.
> Q: And it's fair to say that there was testimony that someone in the Miller group through (sic) the first shot was the first one to throw a punch in that fight?

A: Yes.
Q: Correct?
A: That's correct.

App. 457-59. Thereafter, Attorney Rogers testified that there was evidence during the criminal

trial that Petitioner was not at fault in bringing on the fight—that he was intervening in the club

fight at the request of his girlfriend. App. 459-60. Further, Attorney Rogers testified that during

jury deliberations, the jury asked about a lesser included offense, but the court told them not to

consider a lesser offense. App. 460. Attorney Rogers did not recall why he did not request a jury

instruction on manslaughter at that point in the trial. *Id.*

During his testimony, Petitioner testified that he and Attorney Rogers did not have a

conversation about a jury instruction on manslaughter at the end of the trial. App. 486. Petitioner

testified that he understood the law as it pertains to voluntary manslaughter and that it is a lesser-

degree of homicide involving sudden heat of passion upon sufficient legal provocation. App.

486-87. Further, Petitioner testified that Attorney Rogers did not explain to him that he could

request a charge of voluntary manslaughter without admitting that he shot anyone.  App. 487-88.

Had he understood he could have requested a jury instruction on voluntary manslaughter,

Petitioner testified he would have wanted that instructed given to the jury. App. 488; 493.

Petitioner testified that he recalled the point during his criminal trial when the jury asked a

question about a lesser included charge, but Petitioner testified that he and Attorney Rogers did

not have a conversation on requesting a jury charge for voluntary manslaughter at that point. *Id.*

Turning to the merits of this habeas ground, the undersigned finds that Petitioner cannot

show the PCR court unreasonably applied federal law or unreasonably applied the facts in

denying relief upon this claim. Under South Carolina law, "[v]oluntary manslaughter is the

unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation."

*State v. Starnes*, 698 S.E.2d 604, 608 (S.C. 2010). Both heat of passion and sufficient legal provocation must be present at the time of the killing to constitute voluntary manslaughter. *Id.* ("We have consistently held that both heat of passion and sufficient legal provocation must be present at the time of the killing."). Here, the PCR court noted that Petitioner testified that "[on the night of the crime] he left the club, got a weapon, and went back into the club while holding his weapon." App. 514. Additionally the PCR court found that Petitioner testified that "he believed someone pointed a gun at him, so he fired into a crowd of people in order to protect himself." *Id.* Furthermore, the court found that Petitioner's account was "largely the facts presented at trial." App. 514-15. Despite Petitioner's testimony, the PCR court held voluntary manslaughter was not warranted under the facts presented. App. 515. Thus, as a matter of state law, the PCR court determined that Petitioner was not entitled to a voluntary manslaughter jury instruction. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Clinkscales v. Stevenson*, No. 6:11-1160-TMC-KFM, 2012 WL 1030345, at *11 (D.S.C. Jan. 27, 2012) *report and recommendation adopted*, No. 6:11-1160-TMC, 2012 WL 1030256 (D.S.C. Mar. 27, 2012). Because Petitioner was not entitled to a jury charge on voluntary manslaughter as a matter of state law, Petitioner could not show that trial counsel was deficient in not requesting the charge. Therefore, the undersigned finds the PCR court's application of *Strickland* was not unreasonable. Accordingly, this habeas ground should be dismissed.

V.    Conclusion and Recommendation

Therefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 11, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

23

December 9, 2015                              Kaymani D. West
Florence, South Carolina                     United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**